<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| TAMASA NOBLES, | Civ. Action No. 19-10607 (RMB) |
| Petitioner | |
| v. | **OPINION** |
| SARAH DAVIS, and ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, | |
| Respondents | |

BUMB, United States District Judge

This matter comes before the Court upon Petitioner Tamasa Noble's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging her state court conviction for aggravated manslaughter, (Pet., Dkt. No. 1), Respondents' answer in opposition to habeas relief (Answer, Dkt. No. 9), and Petitioner's traverse. (Traverse, Dkt. No. 15.) The petition will be determined on the record pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

I.  PROCEDURAL HISTORY

On May 15, 2013, an Atlantic County grand jury returned an Indictment charging Petitioner with the first-degree murder of Devon Devine, in violation of N.J.S.A. 2C:11-3a (1), (2) (Count One); third-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4d (Count Two); and fourth-degree unlawful possession of a

weapon, in violation of N.J.S.A. 2C:39-5d (Count Three). (Indictment, Dkt. No. 6-3.) On April 4, 2014, Petitioner entered into a plea agreement. (Plea Transcript, 4/4/2014, Dkt. No. 6-4.) Petitioner plead guilty to a single count of first-degree aggravated manslaughter, a violation of N.J.S.A. 2C:11-4(a)(1), under amended Count One in Atlantic County Indictment. (Id.; Judgement of Conviction, Dkt. No. 6-8 at 1.) In accordance with the plea agreement, the State recommended a maximum "cap" sentence of a 22-year term of imprisonment, subject to an 85% parole ineligibility term. (Id. at 20.)

After conducting a plea colloquy with Petitioner, in which a factual basis for her plea was put on the record, the Honorable Michael A. Donio, J.S.C. accepted Petitioner's guilty plea. (Id.) The sentencing hearing was conducted on June 6, 2014, before the Honorable Michael A. Donio, J.S.C., who imposed a 20-year term of imprisonment, subject to an 85% parole ineligibility term. (Sentencing Transcript, 6/6/2014, Dkt. No. 6-5 at 31.) Petitioner filed a direct appeal, and the Appellate Division affirmed her conviction and sentence on March 11, 2015. (Appellate Division Order, Dkt. No. 6-9.)

On July 15, 2015, Petitioner filed a petition for post-conviction relief ("PCR"). (PCR Pet., Dkt. No. 6-10.) She filed a supplemental PCR petition on May 19, 2016. (Supplemental PCR Pet., Dkt. No. 6-11.) The Honorable Damon G. Tyner, J.S.C. held a PCR hearing on August 16, 2016. (PCR Hearing Transcript, Dkt. No. 6-7.) After considering the parties' oral arguments, the court denied the petition by letter opinion on August 23, 2016 and order on August 29, 2016. (PCR Court Opinion, Dkt. No. 6-13; PCR Court Order, Dkt. No. 6-14.) On July 19, 2018, the Appellate Division affirmed the denial of Petitioner's PCR petition. State v. Nobles, No. A-0375-16T4, 2018 WL 3468085 (N.J. Super. Ct. App. Div. July 19, 2018) (Dkt. No. 6-17.) The New Jersey Supreme Court denied

2

Petitioner's petition for certification. State v. Nobles, 202 A.3d 604 (2019) (Dkt. No. 6-20.)

Petitioner filed her petition for habeas corpus relief in this Court on April 22, 2019. (Pet., Dkt. No. 1.)

II.     DISCUSSION

    A.     Standard of Review

Prior to bringing a federal habeas petition under 28 U.S.C. § 2254(b)(1)(A), a state prisoner must exhaust his state remedies. Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2). If a state prisoner's constitutional claim has been barred in the state courts on procedural grounds, a procedural default occurs and a habeas court cannot review the claim absent a showing of cause and prejudice or actual innocence. Coleman v. Thompson, 501 U.S. 722, 729, 750 (1991).

If a constitutional claim has been exhausted,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When a state court summarily rejects all or some federal claims without discussion, habeas courts must presume the claim(s) was adjudicated on the merits. Bennett v.

3

Superintendent Graterford SCI, 886 F.3d 268, 282 (3d Cir. 2018) (citing Johnson v. Williams, 568 U.S. 289, 302 (2013)). The presumption is rebuttable. Bennett, 886 F.3d at 281-83. The Supreme Court provided the following guidance.

> [H]ow [is] a federal habeas court to find the state court's reasons when the relevant state-court decision on the merits, say, a state supreme court decision, does not come accompanied with those reasons. For instance, the decision may consist of a one-word order, such as "affirmed" or "denied." What then is the federal habeas court to do? We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." Johnson, 568 U.S. at 303.

The Third Circuit directed habeas courts to follow a two-step analysis under § 2254(d)(1). See Rosen v. Superintendent Mahanoy SCI, 972 F.3d 245, 253 (3d Cir. 2020) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir. 1999) (*en banc*), cert. denied 528 U.S. 824 (1999)). First, courts should "determine what the clearly established Supreme Court decisional law was at the time Petitioner's conviction became final" and "identify whether the Supreme Court has articulated a rule specific enough to trigger 'contrary to' review." Id. at 253 (quoting Fischetti v. Johnson, 384 F.3d 140, 148 (3d Cir. 2004)). "The 'clearly established Federal law' provision requires Supreme Court

4

decisions to be viewed through a 'sharply focused lens.'" Id. Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), only if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" Williams, 529 U.S. at 405-06.

Second, if Supreme Court precedent is not specific enough to trigger contrary review, habeas courts should "evaluate whether the state court unreasonably applied the relevant body of precedent." Rosen, 972 F.3d at 253 (quoting Matteo, 171 F.3d at 888)). Under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410). For relief under this provision, the state court's decision "evaluated objectively" must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Rosen, 972 F.3d at 252 (quoting Matteo, 171 F.3d at 890)). A habeas court must frame the "relevant question as whether a fairminded jurist could reach a different conclusion." Shinn v. Kayer, 141 S. Ct. 517, 524 (2020) or, in other words, whether "every fairminded jurist would disagree" with the state court. Mays v. Hines, 141 S. Ct. 1145, 1149 (2021).

A petitioner who claims that the state court's adjudication of his claim was based on an unreasonable factual determination under § 2254(d)(2), faces a similarly heavy burden of proof because "a determination of a factual issue made by a State court shall be presumed to

5

be correct." 28 U.S.C. § 2254(e)(1); see also Miller-El v. Cockerell, 537 U.S. 322, 340 (2003). "The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion." Rosen, 972 F.3d at 252 (3d Cir. 2020) (citing Campbell v. Vaughn, 209 F.3d 280, 291 (3d Cir. 2000)).

"Although state prisoners may sometimes submit new evidence in federal court," the habeas statute, "is designed to strongly discourage them from doing so." Cullen v. Pinholster, 563 U.S. 170, 186 (2011). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" Id. (quoting Williams v. Taylor ("Michael Williams"), 529 U.S. at 437 (additional citations omitted)). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Pinholster, 563 U.S. at 180-81.

The habeas statute also permits an evidentiary hearing under the following circumstances,

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). The Supreme Court explained,

> Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief. For example, not all federal habeas claims by state prisoners fall within the scope of § 2254(d), which applies only to claims "adjudicated on the merits in State court proceedings." At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court. *See*, *e.g.*, *Michael Williams*, 529 U.S., at 427–429, 120 S.Ct. 1479.

Pinholster, 563 U.S. at 185–86.

  B.  Appellate Division's Findings of Fact on Post-Conviction Appeal

28 U.S.C. § 2254(e)(1) provides that

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

On post-conviction relief review, New Jersey Superior Court, Appellate Division provided the following factual summary:

> According to Kedron Henry, who was [Petitioner's] neighbor and an eyewitness to the event, [Petitioner] stabbed and killed her former boyfriend, Devon Devine, following an argument in Henry's apartment. Henry told the police he frequently heard [Petitioner] and Devine arguing, and that Devine had hit

> defendant on prior occasions. However, Devine had recently moved out of [Petitioner's] apartment.
>
> On December 2, 2012, Devine was visiting Henry in his apartment. As they were talking, [Petitioner] came in and asked Devine to return his key to her apartment. Devine denied having the key and the former couple began to argue. [Petitioner] then went into Henry's kitchen, picked up a knife, and began to brandish it at Devine. Henry grabbed her and told her to give him the knife. She did so, and Henry put the knife back in the kitchen.
>
> [Petitioner] began wrestling with Devine in the other room. After [Petitioner] "broke a pair of ear phones that belonged to" Devine, he punched her in the leg, and [Petitioner] left the apartment. Henry and [Devine] waited a few minutes and then went outside, where they found [Petitioner] waiting for them with "one hand tucked in front of her body." Devine and Henry retreated into Henry's apartment, and [Petitioner] followed them inside.
>
> Henry saw that [Petitioner] was carrying another knife and he attempted to restrain her. He yelled to Devine to "flee the residence[,]" and Devine went down the front stairwell. Henry held on to [Petitioner] and, thinking Devine had gotten out the front door, released his grip on her. [Petitioner] went down the stairwell, and Henry pursued her. As he did, Henry saw that Devine had not yet left the apartment, and was standing by the front door. At that point, [Petitioner] stabbed Devine once in the chest and he later died as the result of the wound. When the police arrived at the scene, they found "no fresh bruises" on [Petitioner], or any "marks on her face indicating she had been hit[.]"

Nobles, 2018 WL 3468085, at *1; (Dkt. No. 6-17 at 2-3.)

    C.    <u>Ground One</u>

In her first ground for relief, Petitioner alleges she was denied effective assistance of counsel because her counsel failed to explain how "battered woman's syndrome could be applied to a self-defense argument in order for [P]etitioner to make an intelligent and knowing decision whether or not to accept a plea offer from the State and to relinquish her right to a

8

trial." (Pet., Dkt. No. 1 at 6.) Petitioner claims that long-term physical abuse culminated on the day of the homicide in another episode of abuse by the victim and Petitioner defended herself. (Id.)

Respondents oppose relief on Ground One of the petition, arguing that the record supports the Appellate Divisions' affirmance of the PCR court's denial of this claim. (Answer, Dkt. No. 6 at 8-14.) Respondents contend the record supports the PCR court finding that trial counsel did investigate battered woman's syndrome by retaining an expert and discussed that investigation with Petitioner. (Id. at 10-12.) Additionally, the record demonstrates that Petitioner did not have a legitimate claim of self-defense. (Id.)

In his traverse, Petitioner argues that although the state court found trial counsel made a strategic decision that self-defense was not viable at trial, a poor strategic decision by counsel can serve as ground for habeas corpus relief. (Travers, Dkt. No. 7 at 8.) She claims she was prejudiced by trial counsel's poor performance. (Id.)

1.     *Standard of Review: Sixth Amendment Ineffective Assistance of Counsel*

The burden of proof on a Sixth Amendment claim of ineffective assistance of counsel under 28 U.S.C. § 2254 lies with the petitioner. Pinholster, 563 U.S. at 181 (citing Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam)). To meet the burden, Petitioner must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The two-part test requires a petitioner to establish (1) counsel's deficient performance and (2) prejudice. Strickland, 466 U.S. at 687. The first part of the test requires a petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Furthermore, courts "must

9

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

"If it is easier to dispose of an ineffectiveness claim on the ground of a lack of sufficient prejudice, . . . that course should be followed." Id. at 697. "Prejudice" is established when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

2. *State court determination*

As a preliminary matter, applicable to each of the grounds for relief in the habeas petition, the New Jersey Supreme Court denied review of the Appellate Division's opinion on PCR appeal. Therefore, this Court "look[s] through" to the Appellate Division's reasons for rejecting Petitioner's federal claims. See Wilson, 138 S. Ct. at 1192 (describing "look-through" procedure). The Appellate Division, on PCR appeal, considered the record and the PCR Judge's findings and affirmed the PCR court's denial of this claim.

The Appellate Division provided the following summary of the record that supported the finding that defense counsel's performance was not deficient:

> In preparation for trial, [Petitioner's] attorney retained an expert psychologist to evaluate [Petitioner] and prepare a report to assist the attorney in determining whether [Petitioner] could present evidence that she was the victim of Battered Women's Syndrome. As our Supreme Court has explained, "Battered Women's Syndrome is recognized as 'a collection of common behavioral and psychological characteristics exhibited in women who repeatedly are physically and emotionally abused over a prolonged length of time by the dominant male figure in their lives.'" State v. Hess, 207 N.J. 123, 149 (2011) (quoting State v. B.H., 183 N.J. 171, 182 (2005)). "Evidence of the syndrome is admissible, typically in self-defense cases, to 'explain conduct exhibited by battered women toward their abusers'" and to "help[ ] our understanding of 'why a woman remains in an abusive

10

relationship' and why an 'abused woman may have become conditioned into believing that she is powerless to escape from the abuse.'" Ibid. (quoting B.H., 183 N.J. at 183).

The psychologist prepared a written report which the attorney reviewed with [Petitioner] on a number of occasions. While the psychologist opined that [Petitioner] suffered from a combination of "Posttraumatic Stress Disorder and Persistent Depressive Disorder[,]" she could only state that this condition was "sufficient to have potentially negated at least one mental element of the charged crime, the purposeful intent to cause . . . Devine's death." (Emphasis added). The psychologist also stated that the prior domestic violence [Petitioner] suffered in the relationship "may have contributed to her formation of an honest, reasonable belief that she had to defend herself against further episodes of violence with deadly force[.]" (Emphasis added). Thus, the psychologist did not draw a definitive conclusion in her report.

. . .

Before accepting the plea, the trial judge conducted a thorough voir dire of [Petitioner] and her understanding of the plea. [Petitioner] acknowledged that her attorney had "explained" the expert's report to her and answered all of her questions about it. [Petitioner] also stated that the attorney met with her "[t]oo many [times] to count" during the eighteen months she represented her. [Petitioner] then gave a factual basis for her guilty plea. Convinced by [Petitioner's] testimony that she was acting "knowingly and voluntarily, [and] with the advice of competent counsel," the judge accepted [Petitioner's] plea.

Nobles, 2018 WL 3468085, at *1-2; (Dkt. No. 6-17 at 3-6.)

The Appellate Division then affirmed the PCR court's findings as follows:

The [PCR Judge] concluded that [Petitioner] failed to satisfy the two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a showing that trial counsel's performance was deficient and that, but for the deficient performance, the result would have been different.

[The PCR Judge] determined that [Petitioner's] first contention was nothing more than a "baseless" attack on the strategy employed by her trial attorney. The judge found that other than [Petitioner's] "bald assertion" that a self-defense argument would have been successful, she "offer[ed] no evidence" to support this

11

>   allegation. Instead, [Kendron] Henry told the police that
>   [Petitioner] pursued Devine twice with a knife before killing him
>   as the victim was attempting to flee the apartment. Thus, there
>   was "no valid claim for self-defense." [The PCR Judge] also
>   noted that [Petitioner's] attorney retained an expert, reviewed the
>   expert's report, and discussed the matter "numerous times" with
>   [Petitioner]. Thus, the judge concluded "it [was] clear from the
>   record . . . that trial counsel pursued the [Battered Woman's
>   Syndrome], but did not see it as a viable trial defense."
>
>   Having considered [Petitioner's] contentions in light of the record
>   and the applicable law, we affirm the denial of [Petitioner's] PCR
>   petition substantially for the reasons detailed at length in [the
>   PCR Judge's] comprehensive written opinion. The judge's
>   conclusion that defense counsel's handling of the expert report
>   was sound, tactical strategy is firmly grounded in the record.

Nobles, 2018 WL 3468085, at *4; (Dkt. No. 6-17 at 11.) Because the state courts addressed the merits of the claim, Petitioner is not entitled to an evidentiary hearing. Pinholster, 563 U.S. at 185–86.

        3.    *Analysis*

The Appellate Division applied the Strickland standard to Petitioner's ineffective assistance of counsel claim. Therefore, the question on habeas review is whether the state court's decision "evaluated objectively . . . resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Rosen, 972 F.3d at 252 (quoting Matteo, 171 F.3d at 890)). In other words, whether "every fairminded jurist would disagree" with the state court. Mays, 141 S. Ct. at 1149.

The Appellate Division rejected this claim based on Petitioner's plea colloquy, where she stated she met with defense counsel numerous times and they discussed the expert report. The Appellate Division also found the evidence did not support a self-defense argument. The

Court has reviewed the record that was before the Appellate Division on appeal of the denial of Petitioner's PCR petition and the record supports the Appellate Division's conclusion.[1]

Defense counsel investigated battered woman's syndrome by securing an expert. (See Report of Catherine M. Barber, Dkt. No. 6-22; see also Supplemental Letter of Catherine M. Barber, Dkt. No. 6-23.) That report did not conclusively find Petitioner suffered from battered woman's syndrome. (See Supplemental Letter of Catherine M. Barber, Dkt. No. 6-23.) During Petitioner's plea colloquy, the judge asked Petitioner how many times she met with her attorney and she replied, "too many to count." (Plea Transcript, 4/4/2014, Dkt. No. 6-4 at 15:23-25.) Regarding the expert report Petitioner responded to the judge as follows:

> Q. And you understand that [counsel] availed herself of getting a, quote, expert report from an expert on your behalf?
> A. Yes.
> Q. And you understand that because of that expert report the - - and that is probably the main reason that the plea is being offered today, not to murder but to aggravated manslaughter?
> A. Yes.
> Q. And you received that expert report?
> A. Yes.
> Q. And [counsel] brought it to you and went over it with you?
> A. Yes, she explained it to me.
> Q. She what?
> A. Yes, she explained it to me.
> Q. Okay. And you asked her questions about it?
> A. Yes.

(Id. at 16:16 to 17:8.)

The statement from witness Kendron Henry also supports the Appellate Division's findings. Henry stated that following an argument over Petitioner's apartment key in Henry's

---

[1] See Dkt. Nos. 6-4, 6-5, 6-6, 6-7, 6-10, 6-11, 6-12, 6-13, 6-15, 6-16, 6-21, 6-22, and 6-23.

13

apartment, Petitioner threatened the victim with a knife from Henry's kitchen and Henry grabbed her and took the knife from her. (Kendron Henry Statement, Dkt. No. 6-21 at 3-4.) Petitioner then returned to her own downstairs apartment. (Id.) Henry and the victim left the building through the back entrance and they encountered Petitioner outside with "her hand in her [] waist." (Id. at 6.) The victim ran back in the house and Petitioner pulled out a knife. (Id. at 7.) Henry stopped Petitioner but she "got loose" and ran after the victim stabbing him once. (Id. at 8.)

Petitioner stated on the record that defense counsel went over the contents of the export report with her and the record does not support a claim of self-defense. The Appellate Division applied Strickland and found that based on those portions of the record Petitioner did not show defense counsel's decisions were not the result of reasonable professional judgment. Based on the record, the state court's determination was not "not contrary to nor an unreasonable application of clearly established federal law." 28 U.S.C § 2254(d)(1). Petitioner is denied habeas relief as to Ground One.

D.    Ground Two

In Petitioner's second ground for relief, she alleges defense counsel was ineffective at sentencing because of "counsel's failure to present and argue important mitigating evidence related to the physical abuse of petitioner by the victim both in the months preceding the homicide and on the day of the homicide itself." (Pet., Dkt. No. 1 at 7.) Petitioner claims the evidence of battered women's syndrome should be been argued at sentencing. (Id.)

Respondents oppose habeas relief on Ground Two of the petition. (Answer, Dkt. No. 6 at 14-16.) Respondents content that the Appellate Division reasonably applied the Strickland standard in determining defense counsel effectively represented Petitioner at

14

sentencing. (Id. at 16.)

In her traverse to the answer, Petitioner claims defense counsel's performance at sentencing was deficient and the Court should grant habeas relief on this issue. (Traverse, Dkt. No. 7 at 8-9.)

    1.    *State court determination*

The Appellate Division, on PCR appeal, affirmed the PCR court's denial of this claim, finding "the record fully supports the [PCR] judge's determination that the [defense] attorney effectively represented [Petitioner] at the sentencing hearing." Nobles, 2018 WL 3468085, at *4; (Dkt. No. 6-17 at 11.) The Appellate Division summarized the PRC court's denial of this claim as follows:

> In a thorough written opinion, [the PCR judge] considered both of these contentions and denied [Petitioner's] petition. The judge concluded that [Petitioner] failed to satisfy the two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a showing that trial counsel's performance was deficient and that, but for the deficient performance, the result would have been different.
>
> . . .
>
> Turning to [Petitioner's] second argument, [the PCR judge] found that [Petitioner's] attorney submitted a "lengthy brief prior to the sentencing date that outlined all of the aggravating and mitigating factors for the court." The attorney also reiterated these arguments at the sentencing hearing, and asked the court to impose an eight-year sentence based on the expert's report, Henry's statement to the police, and a host of other arguments. The attorney also presented two witnesses to speak on [Petitioner's] behalf. As a result of the attorney's efforts, the judge imposed a sentence that was two years less than he had originally indicated. Under these circumstances, the judge ruled that the attorney was clearly not ineffective.

Nobles, 2018 WL 3468085, at *3; (Dkt. No. 6-17 at 8.) Because the state courts addressed the merits of the claim, Petitioner is not entitled to an evidentiary hearing. Pinholster, 563 U.S. at 185–86.

      2.    *Analysis*

The Appellate Division applied the correct standard under Strickland in assessing this claim. Therefore, the issue is whether the state court's decision was objectively unreasonable under clearly established Supreme Court precedent.

In affirming the PCR court's denial of this claim, the Appellate Division summarized the following from the record that was before the state court:

> At sentencing, [Petitioner's] attorney used the expert's report to bolster her argument that mitigating factor four, N.J.S.A. 2C:44-1(b)(4), should be considered to reduce [Petitioner's] sentence because the prior domestic violence she suffered might "tend[ ] to excuse or justify [her] conduct, though failing to establish a defense[.]" Pointing to a written statement Henry gave to the police, the attorney also asserted that [Petitioner] acted "under a strong provocation" and, therefore, mitigating factor three, N.J.S.A. 2C:44-1(b)(3), should also be applied.
>
> In response to the attorney's arguments, the judge found both mitigating factors three and four, and, based upon his consideration of these and other relevant aggravating and mitigating factors, sentenced [Petitioner] to twenty years in prison, subject to NERA, on count one. This was two years less than the sentence the judge had indicated would be imposed prior to hearing and considering the attorney's contentions.

Nobles, 2018 WL 3468085, at *2; (Dkt. No. 6-17 at 6.) Based on this record, the Appellate Division affirmed the PCR court's finding that defense counsel was not ineffective as sentencing.

The record supports the Appellate Divisions' denial of this claim. Petitioner's contention that defense counsel failed to present mitigating evidence at sentencing regarding

16

the victim's abuse of Petitioner lacks support in the record. A review of the sentencing transcript reveals that defense counsel explicitly urged the sentencing judge to consider the victim's abuse of Petitioner. Defense counsel argued as follows:

> I'd ask for the same reason that you find aggravating factor four - - I'm sorry, mitigating factor four. Mr. Devine was stabbed after an argument. I've submitted to you, I think there are three, probably, separate expert briefs. There was an original that - - or not an original but a preliminary that was submitted, a final and then there was an addendum to that final expert report. I know that we've gone over that and we've discussed it at length. It did find that Ms. Nobles, at the time that this was happening was suffering from P.T.S.D. and was and had been a victim of abuse by Mr. Devine.
>
> The - - again, as to aggravating, or I'm sorry, mitigating factor five, this was an argument over keys. Mr. Devine had the keys to Ms. Nobles' apartment. He wasn't allowed to be there because the Twin Oaks program indicated that he wasn't supposed to be there. He had entered the apartment earlier that day where they got into the initial struggle that had happened, and I would ask that you find that - - I would ask that you find mitigating factor number five. This, the expert's report specifically again describes the abuse that occurred in the months leading up to this incident.

(Sentencing Transcript, 6/6/2014, Dkt. No. 6-5 at 12:1-24.) Defense counsel also requested that Petitioner be sentenced to an 8-year term of imprisonment in part based on "the expert opinions." (Id. at 15:11-19.) The sentencing judge noted the evidence of battered woman's syndrome and found mitigating factor four to be marginally applicable. (Id. at 26:10-20.)

Thus, the record supports the Appellate Division's rejection of Petitioner's ineffective assistance of counsel claim. Defense counsel clearly urged the sentencing court to consider the expert reports and the victim's abuse of Petitioner. Here, the state court's application of Strickland was neither contrary to, nor involved an unreasonable application of, Strickland and its progeny.  See Premo v. Moore, 562 U.S. 115, 122 (2011) (citation omitted) (when

17

the <u>Strickland</u> analysis is combined with 28 U.S.C. § 2254(d), federal habeas courts' analysis is "doubly" deferential to both the state court and the defense counsel). Petitioner is denied habeas relief as to Ground Two.

### III.     CERTFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 327. For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

IV.     CONCLUSION

Petitioner has not established her burden on habeas review to show the state courts' denial of her claims was contrary to or involved an unreasonable application of clearly established federal law, nor did Petitioner overcome the presumption of correctness of a state court factual finding and establish that a state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, the Court denies the habeas petition.

An appropriate Order follows.

Date:  March 23, 2022

              <u>s/Renée Marie Bumb</u>
              **RENÉE MARIE BUMB**
              **UNITED STATES DISTRICT JUDGE**